We have two cases today. When your case is called, please approach the podium and state your name and whom you represent. That's a recording device. It's not a microphone. It doesn't enhance the sound, so keep your voice up. And you'll each have 15 minutes. I would suggest that the appellant reserve a few minutes for rebuttal. And we're not really strict on the time, but if you're going on too long, I will ask you to wrap up. And please get to your strongest arguments first. We have read your materials very carefully, so we're familiar with the facts. I wouldn't suggest you wasting your time on those unless it pertains to your argument. Thank you. Please call the first case. 150919, Cincinnati Insurance Company v. Arnold Chapman. Good morning, guys. I'm Jim Horstman, together with my co-counsel, Julian Campbell. We represent Cincinnati Insurance Company. Did you want to introduce yourself? Well, when you come up, you can say your name and who you represent. And it's mainly for the record. May it please the Court. We agree with the circuit court that this case injures our reputation. We believe the circuit court made some critical errors in approaching the choice of law issue based on its misunderstanding of the Illinois Supreme Court's opinion in Bridgeview Health Care v. State Farm. The focus of this appeal is the choice of law issue regarding Cincinnati's 2006 insurance policy. Both parties here agree that if Illinois law applies, then Cincinnati's going to lose because it didn't give 30 days advance notice of the TCPA exclusion that was added at the time the 2006 policy was initiated. However, if Illinois law applies, Cincinnati wins because Indiana has no similar prior notice requirement. Cincinnati's TCPA exclusion would be enforceable, and the effect would be that the exclusion would defeat coverage. Counsel, can I ask you, the definition of either settled or unsettled, is that in any of the cases? How would that be defined, if the law in one state is settled versus unsettled? It's, so far as the parties found, it's not defined. Is that a legal term, then, or a term of art? I mean, how would we describe that? I don't believe it is a term of art. I think when you read the circuit court's memorandum opinion, I believe Judge Novak's thought was, unless a matter is definitively resolved by case law, then it's not settled. But I don't think it is a term of art. The circuit court, while recognizing that the case hinges on a choice of law dispute, never actually undertook a choice of law analysis here. And her rationale, the judge's rationale, was that her belief that two of the prerequisites for even getting to a choice of law analysis were not presented in this case. And she looked to the Supreme Court's Bridgeview opinion for this understanding, that there were a couple of prerequisites before you even get to a choice of law analysis. The court found that you can't engage in a choice of law analysis in this case, because Indiana law was not settled, which she derived from the Supreme Court's Bridgeview opinion. And she believed that the competing state's law must be settled before you could get to the choice of law analysis. Secondly, again from her understanding of the Bridgeview opinion, she thought that a court in her position could not make any predictive determinations of what a state's law would be. These are closely related. They're finding that law in Indiana wasn't settled. She also believed then she could not predict, based on the evidence that she was given, what Indiana law would be. The problem is that Bridgeview doesn't impose either one of these prerequisites for a choice of law analysis. And I think it's important to realize the context of Bridgeview. Bridgeview was a Rule 308 appeal, and the issue addressed by the court was just one issue. It was very narrow, and I'll excerpt from the opinion. The question before Bridgeview was, quoting, when a federal district court sitting in a sister state makes a prediction under Erie v. Tompkins, does that prediction in itself establish an actual conflict between the two states' laws for purposes of a choice of law analysis, unquote. So that's the single narrow issue that Bridgeview addressed. There's nothing in that question as to whether the laws of two states must be settled, whatever, however we take that to mean. And there's nothing in that question. I'm sorry. Counsel, let me ask you a question. At some point, Indiana passed a law that required notice, didn't they, at some point? Yes, 2007. And would or would not that suggest that there was no such requirement prior to passing that law? That's our belief. That's the inference we draw. That's your argument, right? That the fact that they passed this law at that particular point in time, you can infer and assume that before that there was no notice requirement. So that goes to your argument that the state of the law was not unsettled, that it was settled, that they didn't have a notice requirement. Is that? That's one, yes. That's one of the three pieces of evidence that we brought to the court that we think shows circumstantially that there was no notice requirement. Okay. The one is the 2007 statute that for the first time imposed a notice requirement in Indiana. We believe that reasonably implies that there was no notice requirement before that. Otherwise, why would the legislature do that? The second piece of evidence is that under Indiana common law, contracts are interpreted and enforced according to their terms. And so an insurance policy like the Cincinnati insurance policy would be enforced according to its terms. And here, one of the terms is a TCPA exclusion. It doesn't say anything in the common law about a notice requirement. The third piece of evidence that we brought to the court that we think shows that there was no notice requirement were a couple of cases. That's the Lexington and the Worcester cases. And they both looked at notice situations, notice issues, discussed what the requirements of Indiana law were, and kind of like with the statute, they covered the area. They didn't find a statute that was in effect in 2006. And they didn't either affirmatively accept or reject the notice requirement, but you get the sense from their whole examination that they were not finding any sort of prior notice requirement at the time they were looking at the issue. Counsel, what about the argument your opponent makes relative to potential conflict that they claim is discussed in the Bridgeview case? How does that apply here? Well, again, they've, I'll say the circuit court, construed this idea of a potential conflict kind of broadly. But I believe you have to look at Bridgeview, what the Bridgeview court was looking at there. And in Bridgeview, the court was actually saying that potential conflict wouldn't work because in that case, there was literally no evidence of Indiana's law. The only thing that was brought to the court in Bridgeview was a federal district court's Erie v. Tompkins prediction of what the state law would be. In Bridgeview, the Illinois Supreme Court said, that doesn't even count. That isn't state law. That doesn't enter into the equation. That's a federal court's prediction. So we're not going to consider that in a situation where the only thing brought before the court is a federal court's Erie prediction of state court. That's like no evidence at all. So when the Bridgeview court is talking about a potential conflict, I think you look at the context of Bridgeview, and what they were saying is we don't accept the party's argument that even though there's no evidence of Indiana law in this case, we can guess at what it might be. So again, it's a very narrow sense of what a potential conflict is, focusing on Bridgeview. Bridgeview didn't say that a court is prohibited from making predictions based on evidence of state law. As I said, Bridgeview said you can't look solely to a federal district court's Erie prediction, but that isn't what we had in this case. We had, as I've mentioned, several different bits of evidence of what state law is. Bridgeview says specifically that a court can consider, quote, all available data, unquote, to determine a state's law. That's why we believe we're justified in presenting to the court these three different indicia of what Indiana's law is, the later statute, Worcester and Lexington, and the common law rule that contracts would be interpreted according to their terms. Counsel, you've got to agree that there's no conclusive Indiana law, though, that gets to the 30-day notice in effect at this time. I think that's fair. These three bits of evidence are circumstantial evidence that there was no notice requirement. There's no Indiana case that comes right out and says it, but it is circumstantially very strong circumstantial evidence. Turn the other way. If you look at what the circuit court, its view of a choice of law analysis, these prerequisites, if it were true that you couldn't reach a choice of law analysis unless both states' law was fully settled, and if it were true that a state court couldn't make predictions of another state's law, we basically would never have choice of law situations. It's almost impossible to satisfy both of those requirements if they were requirements. What you'd really need is in both states, the Supreme Court's definitively deciding an issue in a way that couldn't be distinguished from whatever the case at bar was. And we know that isn't what happens. We know that most choice of law analyses look to decisions of intermediate courts of appeals. And we know in virtually by definition all choice of law analyses require some sort of prediction. It's a rare case where you have the Supreme Courts of both states making a definitive determination of a question of law. So we believe that the circuit court should have undertaken the choice of law analysis because it misread Bridgeview as to these two prerequisites. They really aren't present in Bridgeview at all. Another problem with the trial court's reading of Bridgeview was that the court failed to recognize that Bridgeview doesn't provide the choice of law standard for a situation that involves statutory law. Not Bridgeview. Townsend v. Sears-Robach is the Supreme Court case that sets a standard for a situation where there's conflicting law based on a statute. And in Townsend, the Supreme Court reached the conclusion that the absence of a statute in one state doesn't mean that the state doesn't have any law on a subject. It's just that in the absence of a statute, common law is going to prevail. And in Townsend, the Supreme Court found that in a situation where one state had a statute, it was a damages cap, and the other state didn't have a statute, a damages cap, there was still an actual conflict. And our case is very much like Townsend in that respect. Back in 2006 and before, Illinois had this 30-day prior notice requirement in its statute, and Indiana didn't. And it's very, very analogous to Townsend. One state has a statute. The other doesn't. There's an actual conflict. And had the court followed the analysis in Townsend, it would have found there's an actual conflict, and it would have begun the choice of law analysis. But the court didn't do that here. We have outcome determinative differences between Illinois and Indiana law. The one clearly is the requirement of 30 days prior notice of changes put into a renewal policy. It's undisputed. Illinois has such a requirement. It's in a statute. For the reasons I've expressed before, circumstantially we can see very clearly Indiana didn't. Until 2007, there was no prior notice requirement. So what happens then? Without the statute, by default, Indiana law's common law applies, and we're focused on the principle that says a contract should be construed and enforced according to its terms. So the practical effect of that is what? What's the practical effect? The practical effect is that since Indiana does not have a prior notice requirement, that a court would interpret the 2006 policy according to its terms, and it has this TCPA exclusion, which says this policy does not cover claims brought under the TCPA, which is what the underlying case here is. So it would eliminate coverage. The practical effect is there's no money for the settlement, right? Isn't that the practical effect of all of this? That's what this is all about, right? Yes. Okay. Maybe that's overreaching because this is a 304A appeal. I know, but it's like we're kind of dancing around it, and of course there's a reason why we're here, why you're here, and I was just asking what is the practical effect of the application of Indiana law versus Illinois law? I think my answer would be a maybe because of the jurisdictional context of this case. It's a 304A finding. We're only talking about the court's duty to defend, really. So we're kind of speculating, looking forward, but that might be a consequence. So the outcome determines the differences with the notice requirement, the Indiana law, the TCPA exclusion would apply, resulting in no duty to defend and maybe in the future no duty to indemnify. Another one that comes up in the briefs. Counsel, wrap up if you would, please. Okay, very briefly. Another potential outcome determinative difference is on Indiana and Illinois' different estoppel rules. We think it's not a part of this appeal because there was no cross appeal by the plaintiffs in the case. They lost the ruling on the 2003 policy in the impact of estoppel. They didn't appeal it. We don't think this court reaches it. But if the court does reach the estoppel issue, it's clear by looking at Indiana law and Illinois law that Illinois law has ELCO, ensures they're stopped from raising coverage defenses unless they file a DEC action or defend under reservation of rights. When you look at Indiana law, on the other hand, there's nothing like that. All they have is issue preclusion. They say if an insurer wrongfully fails to defend, then it's going to be bound by whatever determinations are made in the underlying case. They're not precluded from raising all coverage defenses like in Illinois. So we don't think the court should reach estoppel. But if it does, that's just more evidence of an outcome determinative difference. What we're asking in the appeal is for the court to reverse and to then enter summary judgment in favor of Cincinnati on the duty to defend issue and to remand on all remaining issues. Thank you, Your Honor. Good morning, Your Honor. My name is David Oppenheim, and I'm here on behalf of Arnold Chapman and the underlying class. I was actually here on the Bridgeview case itself and in Springfield on Bridgeview. And I think it's important to note that Judge Novak, the circuit court judge, also was the judge in the Bridgeview case, whose opinion ultimately got affirmed by the circuit court. I think she got it right then. She got it right now. And what the issue is that's at the center of all this is can you establish a conflict of law which is clearly and explicitly, in the Bridgeview opinion, a prerequisite to potentially applying another state's law without conclusively establishing what that other state's law is and that it's in conflict with Illinois law. That was the question in Bridgeview. It's the question here. And the Supreme Court was clear on that, that you cannot. I think the key quote from the Bridgeview opinion is located in paragraph 25, and it's the one that the circuit court based her opinion on. We adhere to settled law. A choice of law determination is required only when the moving party has established an actual conflict between state laws. Counsel, didn't that rely, the facts of the case, on a federal court that was predicting what state law would be? In Bridgeview, well, in Bridgeview, the insurer who was also trying to get out of coverage pointed to a federal prediction as its circumstantial evidence of what that state's law might be. The Supreme Court said, uh-uh, that's no good. But it didn't stop there. But isn't that the holding in Bridgeview? That's not the holding. Well, the holding is you need settled law to establish an actual conflict. And it got there in explicitly overruling the Sterling decision that was an appellate court decision that State Farm was relying on in that case. It didn't just say a federal prediction isn't enough to get you there. It said that, but it said in order to get there, you have to prove up what the state law is and that it's settled. And we're nowhere close to that here. Counsel, define, again, as I asked your opponent, settled, unsettled. What does that mean in the law? In the context in which the Supreme Court used it in Bridgeview, it is, well, first of all, the common understanding of the term, as I understand it, is resolved. And the way they used it in the context in which they used it, and I think the correct way to use it, is if there is no controlling case law or statutory law from the other state that is on point, there is no settled conflict of law. How far do we get into the minutia of that, though? Let's say one law talks about someone being 17 years old, someone talks about being 18 years old, as far as timeframe for whatever what. Is that something that is not settled? I mean, it just doesn't agree with the other one. But how far into the minutia of the law do we go, is what my question is. I mean, 30-day notice, 20-day notice, is that settled? The guideposts that we've been given by Bridgeview and by the case law that it was based on, is that if applying the precedence that the party who wants foreign law puts in front of the court, since it's their burden, would lead to a different outcome, then you have established a conflict of law. They did not do that here. They cannot do that here. All they brought, Judge Novak, was the statute that didn't exist at the time and this Lexington case that has a footnote that basically says, well, the notice that was provided here was good enough. What do we do with the common law? Well, the common law is what I'm referring to.  So you can't use that? Sure you can, absolutely. So that does not make settled law, though, the common law? Common law sure makes settled law, absolutely. So, for example, in Townsend, which is what Cincinnati has pointed out, there was a statutory cap on punitive damages in Michigan. There was the same statutory cap on punitive damages in Illinois, but it got overruled, or ruled unconstitutional, I should say, by the Illinois Supreme Court in Best v. Taylor and Machine Works. That entire Tort Reform Act got thrown out, and that was part of it. And so at that point, what Illinois had was the decision, the decision of law by the Illinois Supreme Court and this court and its sister appellate courts. So if Indiana was able to point to a decision, and believe me, they have very good lawyers, and they've searched up and down. If they could have pointed to an Indiana appellate court decision or Supreme Court decision that says, absolutely stick whatever you want into a renewal policy whenever you want, we're going to honor it. That would be a conflict of law. They did not do that. They cannot do that. And I thought it was telling, too, that... Well, it's your position that anything short of the scenario you just described would not constitute a conflict of law. That's your argument? I think that's fair. I mean, I think that you need to put something in front of the court indicating that the other state has this law that's different than Illinois, because otherwise, as the Supreme Court said in paragraph 25... But there's no statute, and the other state has been conducting that particular business through its common law, which clearly establishes that. Your argument is that that's no conflict. Is that it? Well, I think it would depend on what the common law says. Certainly, I mean, it doesn't matter whether the source of the state law is statutory or common law. The question is, is it clearly different from Illinois? And it's not here. Does Indiana have a notice requirement or not? I think it does. I think it's the same as Illinois. Prior to that time? Absolutely. In fact, if you look at the Lexington case, it indicates that there is certainly some sort of requirement because there's an analysis of whether the notice given was good enough. Indiana had a notice requirement that they had to tell their insurance what the Illinois statute requires them to say or something similar? Is that what you're saying? I think so. I mean, that's certainly what, if you look state by state, what the general common law position is. I'm just talking about in this particular case, in this context, are you saying that Indiana had a notice requirement? I think that it's more likely than not that it did, but the fact that we're standing here and we're not sure one way or the other from the Indiana law that's been proffered by the party who wants Indiana law means that they failed to meet their burden to establish settled conflict of law, which is what the circuit court properly found under Bridgeview. My examination of the record and my staff's examination of the record indicates that at the time the 2006 policy was issued, Illinois required and insured to provide 30 days advance notice and Indiana did not. Even today, the Indiana Code 27-1-22-4P does not require the 30 days advance notice that Illinois requires. Do you argue with that? Certainly. I'm not sure where that would come from, and I think that the focus on the 30 days is kind of a red herring here because the record here is that there was no advance notice at all, that the notice, such as it is, was this thing was stuck into a packet of policy materials and given to the insured. And the question is, is that good enough? I mean, to the extent that the court was empowered to make a predictive judgment as to what Indiana law requires, which frankly is what State Farm was trying to do in Bridgeview, none of the cases I've seen have supported that, saying that that would be good enough, whether there's a 30-day requirement or not. But the point gets back to, Bridgeview puts the onus on the party who wants foreign law to prove it up. It doesn't put the onus on the court or its clerks. It doesn't put the onus on the opposing party to establish that there's no conflict because at the end of the day, the Illinois Supreme Court made the policy judgment that there can be applying Illinois law does no injury to State Farm if Indiana law is not an actual conflict. In other words, sorry, there can be no injury in applying the local forms law if that law is not an actual conflict with the law of the other jurisdiction. There's a utility in using our law, which we develop, which the courts develop, which the courts add to, and which the courts are familiar with, and there has to be a compelling reason to depart from it. And what the Supreme Court has said in this context is the compelling reason is a settled conflict. Counsel, can I ask you, Lexington pretty much says the notice that was used in that case was adequate. Is that pretty much the holding of Lexington? Yes. And I guess that just shifting gears a little bit, I know that Counsel for Cincinnati near the end of his presentation got to the second issue in this case. Because if your honors do conclude that there was some sort of clear Indiana law in conflict with Illinois law that would lead to the outcome that the exclusion in the 2006 policy is valid, they still have another problem. And that is that they had an earlier policy, which undisputedly, indisputably had no exclusion, and they still didn't defend, despite the fact that the complaint that they were tendered makes clear that claims were being asserted throughout the period, four years prior to the filing, which would have triggered that policy. And that's basically the Illinois Tool Works holding is when there is some uncertainty as to when all the claims accrue. If you've got a policy covering part of that time when it could accrue, then you've got to defend. Wasn't this one fax on one day? Arnold Chapman received one fax on one day. Arnold Chapman, when he filed the complaint, didn't know what this insured defendant had been doing, but his clear intent from the complaint was to file on behalf of anyone who had ever received any faxes from this defendant, or at least within the statute of limitations. And because they had a duty to defend under that earlier policy, the court could, if it elected to, affirm on that basis as opposed to the basis chosen by the circuit court. But again, the circuit court followed Bridgeview to the letter, and we would urge this court to affirm the circuit court. Counsel, can I ask you one quick question? As far as Mill Cross Appeal, you forfeited your ability to make the argument. Right, and thank you. I was going to make that point. We made cross motions for summary judgment on duty to defend and duty to indemnify. We won. So I'm not sure what I'd be cross appealing from. We advanced these two theories in support of our position. The judge ruled in our favor at the circuit court level, and so everything that this court would need to find for us on the other basis is in the record. I don't know why it's any different that she, in her opinion, disagreed with our position on this issue as opposed to simply not reaching it. But either way, this court, I believe, can affirm on any basis in the record. So just to be clear, your argument is that you didn't forfeit anything.  That's correct, Your Honor. Thank you. Counsel, a brief rebuttal, please. Thank you, Your Honor. Playing this broad interpretation of Bridgeview isn't appropriate, again, because Bridgeview is a real 308 appeal. You can't ignore the context and the jurisdictional limitation of the Bridgeview appeal, which was a single question. Counsel wants to derive broad principles. It's not what the court was doing, not what the court could do under 308. If Plaintiff is right about his requirement of the law of both states being fully settled and his understanding of what that means, courts virtually would never reach a choice of law analysis. It isn't what has happened up to this point in time. And if this were the rule, we would almost never have conflicts of law analyses. Plaintiff says an Indian had a notice requirement. I believe the court's research, as Justice Harris mentioned, is correct. It's what we found. Frankly, it's what they found, too. Lexington did not rule that an Indian had a notice requirement. What it said was if there were a notice requirement, and we're not deciding if there was, it surely was satisfied here, because in that case, like our case, notice was given around the time that the policy was issued. To the agent, though, to the insurance agent. Which is what we had here as well. Okay. As to the second issue, there is a requirement of a cross appeal. It's an aspect of the judgment that was adverse to counsel. There were two policies at issue. The 2003 policy is not part of this appeal. The Illinois Tool Works case is clearly distinguishable. It's a unique case where the court had before it literally thousands of underlying complaints, and the court even noted the parties had not pointed to the court to any particular allegations that we should focus on. So really, in ITW, the court had no practical alternative but to consider the whole thousands of allegations collectively. Here we have a very different situation. The Chapman alleges specifically the date on which he received the fax, one day. We have a certified class which encompasses only the recipients of faxes within a 30-day period in 2006. So this case is bound by GM signed versus state font. It's a second district case, but there's no conflicting first district case in a TCPA context as this is. I believe that covers it, unless the court has questions. Also, quickly, any cases that you can cite that have construed bridge you recently that we might not be aware of? No, I believe we've cited what we saw. Thank you. Thank you. Thank you, Ron. Thank you. This case will be taken under advisement. Thank you both for a good argument. Please call the next case.